```
                 UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW HAMPSHIRE
```

Amanda Michelle Langill

   v.                                                  Civil No. 13-cv-527-PB
                                                          Opinion No. 2015 DNH 027

Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration

**MEMORANDUM AND ORDER**

Amanda Michelle Langill seeks judicial review of the Commissioner's refusal to reopen her previously denied claim for disability insurance benefits.  She argues that she established good cause to reopen because she showed that mental incapacity prevented her from understanding the procedures for appealing her denied claim.  For the reasons that follow, I conclude that substantial evidence supports the Commissioner's decision.  I therefore grant the Commissioner's motion to affirm her decision and deny Langill's motion to reverse.

                                **I.    BACKGROUND**

**A.    Procedural History**

In July 2009, Langill, acting without legal counsel, filed

a claim for disability insurance benefits and supplemental security income.  In her claim, Langill alleged disability due to "[f]ibromyalgia, rapid heartbeat, sinus arrhythmia, and foot problems."  Tr. at 290.  The Social Security Administration denied Langill's claim in October 2009.  Langill did not timely seek further review of the Commissioner's denial, rendering the decision final.

On August 2, 2011, Langill filed another claim for disability benefits, this time represented by counsel.  In that claim, Langill sought supplemental security income as of her application date.  She also asked the Commissioner to reopen her previously denied claim for disability insurance benefits, alleging an onset date of December 31, 2008, her date last insured.  Her claim was denied in December 2011, and she requested a hearing before an Administrative Law Judge ("ALJ").  That hearing took place on October 24, 2012.

On October 26, 2012, the ALJ found Langill disabled as of her application date, August 2, 2011, and awarded her supplemental security income benefits as of that date.  Tr. at 22.  The ALJ, however, declined to reopen Langill's prior claim for disability insurance benefits.  Tr. at 14-15.  He found that

2

Langill had not submitted new and material evidence, and he determined that Langill did not lack the mental capacity to understand the procedures for seeking further review of her claim when it was denied in October 2009.  Tr. at 14-15.  Thus, he concluded, Langill had failed to demonstrate good cause to reopen her initial claim.  Tr. 14-15.

The Appeals Council affirmed the ALJ's decision in November 2013.  On December 9, 2013, Langill filed a complaint in this Court seeking judicial review of the ALJ's refusal to reopen her 2009 application for disability insurance benefits.  Doc. No. 1.  On May 23, 2014, Langill filed an amended complaint.  Doc. No. 13.  As is relevant here, the amended complaint alleges that Langill "suffered violation of her due process because the ALJ did not follow SSA regulations to determine if she had good cause for re-opening . . . [Langill] showed good cause based on mental capacity."  Id. at 1.[1]

---

[1] The amended complaint also alleged that Langill showed good cause "based on . . . new and material evidence."  Doc. No. 13 at 1.  As I explained in my January 2015 order denying the Commissioner's motion to dismiss, this Court lacks subject matter jurisdiction to address that argument.  Doc. No. 18 at 7 n.1; see Dvareckas v. Sec'y of Health & Human Servs., 804 F.2d 770, 772 (1st Cir. 1986); Nerich v. Colvin, 2014 DNH 239, 14-15.  The sole question before me, therefore, is whether Langill's

The Commissioner moved to dismiss Langill's amended complaint for lack of subject matter jurisdiction.  Doc. No. 15. I denied the Commissioner's motion in January 2015, concluding that Langill had raised a colorable constitutional claim by alleging lack of mental capacity to understand how to appeal the denial of her 2009 claim.  Doc. No. 18.  I now proceed to rule on both the Commissioner's motion to affirm her decision, Doc. No. 19, and Langill's motion to reverse or remand the decision, Doc. No. 11.

B.   **Stipulated Facts**

Pursuant to this Court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts.  Doc. No. 20. Because their joint statement is part of the Court's record, I need not recount it here.  Facts relevant to the disposition of this matter are discussed as necessary below.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the administrative record

---

mental capacity prevented her from appealing the denial of her 2009 claim before the deadline to do so expired.

and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  My review "is limited to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). Findings of fact made by the ALJ are accorded deference as long as they are supported by substantial evidence.  Id.  Substantial evidence to support factual findings exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion." Id. at 770.  Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record.  Irlanda

5

Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III. ANALYSIS

As this Court recently explained in Nerich v. Colvin:

> 20 C.F.R. § 404.968 allows a claimant sixty days from receipt of notice of a claim's denial to request review of that denial. 20 C.F.R. § 404.968(a)(1). If a claimant does not request review within the sixty-day period, the Commissioner's decision becomes final. 20 C.F.R. § 404.987(a). Thereafter, the Commissioner may reopen a final decision only as provided by 20 C.F.R. § 404.988. Specifically, the Commissioner may reopen any decision within twelve months "for any reason," within four years if the Commissioner "find[s] good cause" to do so as defined by 20 C.F.R. § 404.989, or at any time beyond twelve months under certain other circumstances that do not pertain here. See 20 C.F.R. § 404.988. [Social Security Ruling ("SSR")] 91-5p, however, stipulates that "[w]hen a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination . . . and the claimant had no one legally responsible for prosecuting the claim" in the prior proceedings, the claimant automatically establishes good cause to reopen the prior decision regardless of how much time has passed since the decision was made. SSR 91-5p, 1991 WL 208067, at *2 (July 1, 1991). To establish good cause in this manner, SSR 91-5p requires claimants to show that they "lacked the mental capacity to understand the procedures for requesting review" before the period for requesting further review expired. Id.

2014 DNH 239, 10-11.

Langill's July 2009 claim was denied in October 2009. Because she failed to appeal the denial before the deadline to do so expired in December 2009, it became final at that time. See 20 C.F.R. § 404.987(a). Invoking SSR 91-5p to establish good cause to reopen her claim, Langill now argues that mental incapacity prevented her from timely appealing her claim's denial. See Doc. No. 11-1 at 5-10.

The ALJ rejected Langill's argument, determining instead that "the record fails to show mental incapacity to understand the procedures for requesting review" before the December 2009 deadline expired. Tr. at 15. For that reason, the ALJ concluded that good cause did not exist to reopen Langill's 2009 claim under SSR 91-5p. Tr. at 15. Langill points to three items in the record to show that the ALJ's decision was unsupported by substantial evidence: a medical evaluation conducted in 2009 by Dr. Ritamarie Moscola, Langill's own testimony during the 2012 hearing before the ALJ, and a retrospective opinion rendered by Dr. Jeffrey Wagner in 2012. See Doc. No. 11-1 at 6-9. This evidence, Langill contends, establishes that she suffered from depression and memory problems in October 2009 that prevented her from understanding

7

how to appeal the denial of her claim.  See id.  I disagree and conclude instead that substantial evidence supports the ALJ's decision.[2]  None of the evidence to which Langill points either individually or collectively suffices to reverse the ALJ's decision.

I begin with Dr. Moscola's report, which documents both Langill's diagnosis of depression and Dr. Moscola's observation that Langill had been suffering from "memory changes" and "foggy brain."  Tr. at 280-81.  Even assuming that Langill experienced these mental health conditions in 2009, the report offers scant further details about them, noting only that Langill was taking antidepressants and "trying to keep depression under control" at the time.  See Tr. at 280-81.  Despite noting that Langill was

---

[2] Although the First Circuit has not decided in a published opinion which standard of review should control SSR 91-5p analysis, the parties agree that the substantial evidence standard should apply, and that position is consistent with the past practice of the First Circuit, other courts of appeals, and this Court.  See Frusher ex rel. Frusher v. Astrue, 391 F. App'x 892, 896 (1st Cir. 2010) (per curiam) (applying substantial evidence standard in SSR 91-5p analysis); Udd v. Massanari, 245 F.3d 1096, 1100 (9th Cir. 2001) (same); Stieberger v. Apfel, 134 F.3d 37, 41 (2d Cir. 1997) (remanding with instruction to apply substantial evidence standard in SSR 91-5p analysis); Shrader v. Heckler, 754 F.2d 142, 144 (4th Cir. 1985) (applying substantial evidence standard in SSR 91-5p analysis); Nerich, 2014 DNH 239, 11 n.7.

experiencing "memory changes" and "foggy brain," the only mental health condition that Dr. Moscola actually diagnosed was depression.  See Tr. at 281.  In sum, nothing in the report suggests that Langill's mental health conditions significantly impaired her understanding of the procedures for appealing her denied claim in late 2009.  For purposes of SSR 91-5p, simply identifying a mental health condition is not enough; a claimant must also "present[] evidence that [the condition] prevented him or her from timely requesting review" of a denied claim.  See SSR 91-5p, 1991 WL 208067, at *2; Nerich, 2014 DNH 239, 13.  Dr. Moscola's report furnishes no such evidence and, therefore, provides no basis to reopen under SSR 91-5p.

To substantiate her claim that she suffered from memory problems that prevented her from appealing her claim in 2009, Langill next points to her testimony before the ALJ during the 2012 hearing, where she told the ALJ that she was experiencing short-term memory problems and difficulty in maintaining focus.  Tr. at 37, 40-41; see Doc. No. 11-1 at 7.  That Langill may have experienced memory problems in 2012, however, does not establish that a mental health condition prevented Langill from appealing her claim three years earlier.  Langill's testimony offers at

9

most a vague claim that she experienced depression at some point in the past, Tr. at 35-36, but it contains no indication that she experienced any mental limitation in late 2009 that prevented her from appealing her claim.  See Tr. at 28-42. Langill's testimony, therefore, sheds no light on whether she could understand how to seek further review of her claim when it was denied in 2009.

Finally, I address Dr. Wagner's 2012 retrospective opinion. In his report, Dr. Wagner concluded that Langill suffered from a number of serious mental health conditions, including depression and anxiety and personality disorders.  Tr. at 401.  He also determined that Langill had experienced these complications since 2005.  Tr. at 389.  Although the ALJ gave significant weight to Dr. Wagner's evaluation of Langill's present impairments in 2012, he gave little weight to Dr. Wagner's retrospective opinion that those impairments had existed since 2005 because "Dr. Wagner did not examine or treat [Langill] at that remote date."  Tr. at 19.

There is no doubt, as the ALJ recognized in his decision, that Langill presently suffers from serious mental health conditions.  See Tr. at 17.  Nevertheless, the ALJ was entitled

10

to give Dr. Wagner's retrospective opinion little weight for at least two reasons.  First, Dr. Wagner examined Langill only one time before rendering his opinion.  Tr. at 391; see 20 C.F.R. § 404.1527(c)(2)(i).  And second, he rendered his opinion in October 2012, three years after the Commissioner denied Langill's 2009 claim and more than seven years after March 2005, the onset date that Langill alleged and Dr. Wagner endorsed.  Tr. at 389, 391; see Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 140 n. 3 (1st Cir. 1987) (utility of retrospective opinion was "seriously curtailed" because it was rendered four and one-half years after the relevant time period); O'Dell v. Astrue, 736 F. Supp. 2d 378, 387 (D.N.H. 2010) ("Medical examinations conducted after the relevant injury period are . . . of limited relevance in disability determinations.").

    The report does discuss certain contemporaneous medical records, including a 2004 depression diagnosis, a 2004 emergency room visit that involved a possible suicide attempt, a 2009 hospital visit report that records "an element of depression" and diagnoses of chronic pain syndrome and chronic sleep deprivation, and and Dr. Moscola's 2009 report.  Tr. at 397-98.

11

Although the incorporation of contemporaneous medical evidence can sometimes bolster a retrospective opinion, the contemporaneous records available to Dr. Moscola do not show that Langill's mental impairments in 2009 prevented her from understanding how to appeal her claim.  See Marcotte v. Callahan, 992 F. Supp. 485, 491 (D.N.H. 1997) ("Retrospective diagnoses . . . may be considered only to the extent that such opinions both substantiate a disability that existed during the eligible period and are corroborated by evidence contemporaneous with the eligible period.").  The 2004 records have no bearing on Langill's mental limitations in 2009 because of their remoteness from the relevant period, and as I have already explained, Dr. Moscola's report provides no evidence that Langill could not understand how to appeal her claim in 2009.  The 2009 hospital visit report is even less helpful, since it identifies only a potential "element of depression" and, judging by Dr. Wagner's synopsis, sheds no light on whether Langill's mental health impairment prevented her from appealing her claim at that time.  See Tr. at 398.  These contemporaneous records, therefore, do not overcome the limitations of Dr. Wagner's report as a retrospective opinion based on a single examination.

Langill points to no other basis for error in the ALJ's decision to give Dr. Wagner's report little weight, and I can discern none in the record.

Other items in the record suggest that any mental health impairments that affected Langill when her claim was denied did not prevent her from understanding how to appeal the denial.  As the ALJ noted, Langill did not allege any mental health conditions in her 2009 disability application.  Tr. at 15, 155; see Dupont v. Astrue, 2010 DNH 214, 10-11 (affirming ALJ's refusal to reopen under SSR 91-5p based in part on claimant's omission of mental health condition in initial disability application).  She denied experiencing depression during an April 2009 medical visit, and the nurse practitioner who conducted that examination noted that Langill presented with "appropriate affect and demeanor," "normal speech pattern," and "grossly normal memory."  Tr. at 245-46.  In her August 2009 function report, Langill indicated that the disability she claimed in her 2009 application had not affected her ability to complete tasks, concentrate, understand, and follow instructions.  See Tr. at 186.  Langill's mother also completed a function report assessing her daughter in August 2009, in

13

which she wrote that Langill followed instructions well and that Langill's ability to understand, follow instructions, complete tasks, and concentrate had not been affected.  Tr. at 167-68. Between this evidence and the fact that the records to which Langill points provide no indication that a mental health condition prevented her from seeking further review of her 2009 claim after it was denied, I conclude that substantial evidence in this record supports the ALJ's refusal to reopen Langill's 2009 claim under SSR 91-5p.[3]

## IV. CONCLUSION

For these reasons, I grant the Commissioner's motion to

---

[3] Langill argues that it was error for the ALJ to consider whether Langill's parents were available and able to assist her when her 2009 claim was denied.  See Doc. No. 11-1 at 9-10.  The ALJ concluded, however, that "the record fails to show mental incapacity [on Langill's part] to understand the procedures for requesting review."  Tr. at 15.  As I have explained, substantial evidence supports that decision.  Under SSR 91-5p, whether claimants "had [anyone] legally responsible for prosecuting [a] claim" matters only if claimants also show that mental incapacity prevented them from independently meeting the deadline for appealing a denied claim.  See SSR 91-5p, 1991 WL 208067, at *2.  Because the ALJ's finding that Langill has not made this showing is supported by substantial evidence, my inquiry ends there, and I need not address whether the ALJ's finding that Langill's parents were available to assist her was proper.

affirm her decision (Doc. No. 19) and deny Langill's motion to reverse (Doc. No. 11).  The clerk is directed to enter judgment accordingly and close the case.

    SO ORDERED.


                                   <u>/s/Paul Barbadoro</u>
                                   Paul Barbadoro
                                   United States District Judge


February 20, 2015

cc:   Robert J. Rabuck, Esq.
      D. Lance Tillinghast, Esq.